IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Gordon P. Gallagher

Criminal Action No. 22-cr-00112-CMA-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRISTIAN CASTRELLON,

    Defendant.

---

**RECOMMENDATION THAT MOTIONS TO DISMISS INDICTMENT BE DENIED**

---

    This matter is before the Court on Mr. Castrellon's Motions to Dismiss The Indictment (D. 33, 38).[1] The Court has considered the Government's responses, Mr. Castrellon's replies, and the entire record in this case. The matter has been referred to this Court be operation of Judge Arguello's May 10, 2022 Order Referring Case (D. 21). The motion is one which 28 U.S.C. §636(b)(1)(A) prohibits this Court from determining, and thus, the Court proceeds by recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

    **Facts**

    On March 14, 2022, Mr. Castrellon was charged in a one-count criminal Complaint (D. 1) with transmitting through interstate commerce a threat to injury a person, in violation of 18 U.S.C. § 875(c). At a detention hearing on March 18, 2022, counsel jointly requested that Mr.

---

[1] Citations in the form of (D. __) refer to the identified document number in the court's electronic docket record.

1

Castrellon undergo a competence evaluation. (D. 14, *see also* D. 12). This Court granted that motion and detained Mr. Castrellon pending further proceedings. (D. 14, 15).

On March 24, 2022, the Government filed an Indictment (D. 18), charging Mr. Castrellon with three additional counts of violations of 18 U.S.C. §875(c).

On May 5, 2022, the Court received a letter (D. 19) from the Federal Bureau of Prisons ("BOP"), reporing that in accordance with this Court's orders, Mr. Castrellon was transferred to FDC SeaTac for a competence evaluation. The BOP advised that Mr. Castrellon arrived at the facility on April 5, 2022, but that, due to COVID-related delays and other circumstances, the facility would be unable to "complete the evaluation[ ] under the normal time frames." The BOP's letter declined to estimate when the examination could be completed. In response to the letter, the Court entered an Order (D. 22), granting the facility an additional 28 days to complete the evaluation or provide an update. On June 28, 2022, the Court received the BOP's assessment that Mr. Castrellon was not competent to stand trial (D. 25). On July 15, 2022, the Court held a Competency Hearing and concluded that Mr. Castrellon was not competent (D. 27). Pursuant to 18 U.S.C. §4241, the Court recommended that Mr. Castrellon be remanded to the custody of the BOP for a period of four months to attempt to restore his competence. On August 23, 2022, Judge Arguello adopted that recommendation (D. 28).

On December 12, 2022, at the Court's request, the Government filed a Status Report (D. 32), stating that Mr. Castrellon had been designated to FMC Butner on July 22, 2022 pursuant to the Court's recommendation, but that "[t]here are presently long waits for bed space at Federal Medical Centers" and that Mr. Castrellon was not expected to arrive at Butner until April 2023.

Mr. Castrellon then filed the instant motions to dismiss the Indictment. In his first motion (D. 33), he argues that 18 U.S.C. §4241(d)(1) provides for a "reasonable period, not to

2

exceed four months" to attempt the restoration of competence and that that period has now expired. He contends that, as a result, the Court must conclude that Mr. Castrellon cannot be restored to competence and dismiss the indictment. In response (D. 37), the Government argued that the four-month period described by 18 U.S.C. §4242(d)(1) had not yet begun to run because Mr. Castrellon had not yet been delivered to FMC Butner to begin the restoration process; he was still awaiting transportation and admission. The Government also argued that, even assuming the time limits of §4241(d) had been exceeded, dismissal of the Indictment was not an appropriate remedy.

In Mr. Castrellon's second Motion to Dismiss (D. 38), he argued that the Indictment should also be dismissed because the Government has violated the Speedy Trial Act, 18 U.S.C. §3161, in that the time that Mr. Castrellon has been waiting for transportation to FMC Butner is not excludable under the Act, and that the 70-day clock for bringing him to trial has now expired.

**Discussion**

**A.  18 U.S.C. §4241**

18 U.S.C. §4241(d) provides for the process to be followed when a court has made a determination that a defendant is not competent to stand trial. The statute provides that "the court shall commit the defendant to the custody of the Attorney General" and that "the Attorney General shall hospitalize the defendant for treatment in a suitable facility for such period of time, not to exceed four months," to make a determination as to whether the defendant's competence can be restored. 18 U.S.C. §4241(d)(1). The statute provides that if, at the end of that time period, the defendant's competence is not restored, the defendant will typically be discharged to state authorities for further care and treatment. *Id.*, *citing* 18 U.S.C. §4246(d).

The question presented here is whether the four-month period specific by 18 U.S.C. §4241(d) began running at the time the Court "commit[ted]" Mr. Castrellon to the Attorney General (that date being August 23, 2022) or whether that period begins running once Mr. Castrellon is "hospitaliz[ed]" to begin the restoration process (a date that has yet to occur). The statute was enacted in response to *Jackson v. Indiana*, 406 U.S. 715 (1972), in which the Supreme Court held that under the Due Process clause, a defendant "who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity." *Id.* at 738. The *Jackson* court observed that "it [is not] appropriate for us to attempt to prescribe arbitrary time limits," deferring that decision to Congress. *Id.*; *see U.S. v. Anderson*, 679 Fed.Appx. 711, 713 (10th Cir. 2017) (finding that the four-month period of §4241(d) comports with *Jackson*'s "reasonable period of time" requirement).

In *U.S. v. Magassouba*, 544 F.3d 387 (2d Cir. 2008), the court confronted a situation somewhat similar to that presented here. The defendant was arrested on a drug trafficking offense and detained under the Bail Reform Act, 18 U.S.C. §3142(e). *Id.* at 393. In January 2004, defense counsel raised a concern about the defendant's competence, and after proceedings to resolve that question, the court found the defendant incompetent on October 13, 2004. At that time, the court remanded the defendant to the BOP for hospitalization pursuant to §4241(d). *Id.* at 394-95. Due to miscommunications, the order directing the defendant's hospitalization was not executed by the U.S. Marshals Service for more than a month, during which the defendant remained confined in an ordinary detention center. *Id.* at 395. Even after that mistake was corrected, another month passed before the defendant was finally admitted to FMC Butner on December 22, 2004 to begin treatment. *Id.* Although the statute permitted only a four-month

period for treatment, staff at FMC Butner took four months and two weeks before concluding their process. *Id.* at 395-96. (Further proceedings occurred but are not relevant to this discussion.) The defendant moved to dismiss the indictment against him on the grounds that the Government had exceeded the four-month limitation of §4241(d), and indeed, the "reasonableness" period encompassed by *Jackson*'s interpretation of the Due Process clause.

The Second Circuit agreed that the four-month period of §4241(d) had been exceeded, but it specifically rejected the defendant's argument that the roughly two-month period between the court's October 2004 order directing his hospitalization and his actual arrival at FMC Butner should be included in computing how time in excess of four months was involved. It explained that §4241(d) speaks of "hospitaliz[ing] the defendant for treatment in a suitable facility," and that "the only facility where Magassouba appears to have been held in custodial hospitalization is Butner, where he was confined for four months and three weeks." *Id.* at 412-13. As to the two-month period between the court's order directing hospitalization and his arrival at FMC Butner, the court found that he was "generally detained at the MDC or MCC" during that period and "that commitment was authorized not by §4241(d)(1) but by the Bail Reform Act." Thus, the court held that "the §4241(d)(1) confinement error in this case is limited to the three weeks in excess of the four months that Magassouba was held in custodial hospitalization at Butner." *Id.* at 414. Thus, *Magassouba* clearly stands for the proposition that a delay occurring between the time a court remands a defendant for restoration of competence and the time that the defendant actually begins hospitalization for treatment is not included within the four-month hospitalization period provided by §4241(d)(1).

Mr. Castrellon relies on *U.S. v. Donnelly*, 41 F.4th 1102 (9th Cir. 2022), a case that presents exactly the same facts as Mr. Castrellon's situation. In *Donelly*, as in *Magassouba*, the

court held that the four-month period in §4241(d) begins running upon the hospitalization of the defendant, and thus found no violation of §4241(d)(1). *Id.* at 1105 ("We think the text of the statute makes clear that the four-month time limit applies only to the period of hospitalization, and thus begins to run when the defendant has been hospitalized"). But the court went on to conclude that under *Jackson*, a lengthy delay between the commitment of the defendant for treatment and the defendant's hospitalization to begin that treatment was violated by the Attorney General waiting six months or more to designate the defendant to a treatment facility. *Donnelly* acknowledges that §4241 allows the Attorney General a reasonable amount of time to designate an incompetent defendant to an appropriate treatment facility, but it expressed disbelief that "*Jackson*'s 'reasonable relation' requirement permits a pre-hospitalization commitment period, whose purpose is simply to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility, to last longer than the maximum time Congress permitted for the period of hospitalization itself." 41 F.4th at 1106. Thus, *Donelly* determined that the then-eight month delay in designating the defendant to a hospital facility violated the §4241.

*Donnelly* went on to determine whether that violation warranted dismissal of the indictment, as the defendant had requested. It concluded that dismissal of the indictment was inappropriate, as the violation of the defendants rights did not rise to the level of "grossly shocking and outrageous government misconduct" warranting such a hard penalty. 41 F.4th at 1107 n. 3. Instead, it noted that "both Donnelly's liberty interest and Congress's directive to restore incompetent defendants where possible will be best served by requiring the government to hospitalize Donnelly without further delay." *Id.* at 1107. Thus, the court remanded the case to the District Court with a directive to enter an injunction requiring the defendant to be designated

to a hospital for treatment within seven days. The court also noted in closing that "nothing in our decision today forecloses the possibility that dismissal may become appropriate at a future date" and that "should the Attorney General fail to comply with the district court's order on remand, that court may consider whether such a failure—layered on top of the existing statutory violation—leaves available "no lesser remedial action" than dismissal." *Id.*

Taken together, both *Donnelly* and *Magassouba* agree with the basic premise that §4241(d)(1)'s four-month limitation period is not implicated in Mr. Castrellon's circumstances. Both cases stand for the proposition that it is only upon the hospitalization that the four-month period begins to run, and Mr. Castrellon has yet to be hospitalized.[2] Beyond that, this Court agrees in broad terms with the analysis in both cases. Mr. Castellon's current detention while awaiting designation to a hospital facility is permissible under the Bail Reform Act, as *Magassouba* recognizes. But the Court also agrees with *Donnelly* that, generally, delays of four, six, or eight months in designating defendants to a medical facility strain the bounds of what can be deemed "reasonable" periods of detention under *Jackson*.

This Court will not go as far as *Donnelly* to specifically make a finding that Mr. Castrellon's statutory or constitutional rights have already been violated. Rather, this Court will observe that the Government has represented that Mr. Castrellon is "scheduled to arrive [at FMC Butner] in early April 2023." (D. 37 at 2). At that time, Mr. Castrellon will have spent eight months awaiting designation to a medical facility, precisely the same amount of time that caused the court in *Donnelly* to direct immediate hospitalization. 41 F.4th 1106 ("Donnelly has now

---

[2] Moreover, the Court notes that Judge Arguello's August 23, 2022 Order specifically states that the four-month deadline for restoring competence "will begin upon [Mr. Castrellon's] transfer to the medical facility." (D. 28 , ¶ 3). It is undisputed that that "transfer" has yet to occur.

been held in the pre-hospitalization custody of the Attorney General for more than eight months"). Rather than enjoin the Government to effectuate the immediate hospitalization of Mr. Castrellon – a process that may be unduly disruptive or which may result in the Attorney General designating Mr. Castrellon to a less-optimal facility – the Court observes that, given the current date, it appropriate to simply hold the Government to its representation: that Mr. Castellon shall be hospitalized no later than early April 2023. If Mr. Castrellon is not assigned to a suitable facility and beginning treatment by April 10, 2023, this Court, like the court in *Donnelly*, would then strongly entertain dismissing the indictment at that time.

### B. Speedy trial

Mr. Castrellon's second motion contends that his detention has now exceeded the limits of the Speedy Trial Act, 18 U.S.C. §3161(c). Generally speaking, the Speedy Trial Act requires that a defendant be brough to trial within 70 days of his indictment, 18 U.S.C. §3161(c), although that time period is subject to a wide array of circumstances that toll that 70-day clock. *See* 18 U.S.C. §3161(h).

18 U.S.C. §3161(h)(4) provides that the 70-day clock is tolled for "any period of delay resulting from the fact that the defendant is mentally incompetent [ ] to stand trial." That is the case here: the Court having determined on August 23, 2022 that Mr. Castrellon is not competent to proceed to trial, the Speedy Trial clock was tolled and remains so until Mr. Castrellon's competency is restored pursuant to 18 U.S.C.§4241(d)(1) and (2).[3] Admittedly, as noted above,

---

[3] Mr. Castrellon's motion is focused on the notion that the Speedy Trial clock expired during the period that he was awaiting admission to FMC Butner. Nevertheless, in an abundance of caution, this Court will briefly review the entire Speedy Trial calculation.
18 U.S.C. §3161(c) begins the clock running on the later of the date of the defendant's first appearance or the date of indictment. In this case, the Indictment (D. 18) was returned on March 24, 2022, slightly more than a week after Mr. Castrellon's initial appearance (D. 7).

Mr. Castrellon is not currently hospitalized under §4241(d)(1), but rather, is in "ordinary detention" under the Bail Reform Act. But that status does not alter the fact that Mr. Castrellon has been found to be incompetent. 18 U.S.C. §3161(h)(4)'s language is clear that the toll results from "the fact that the defendant is mentally incompetent," and does not condition its application on whether the defendant is or is not receiving treatment under §4241(d).

Mr. Castrellon argues that the Court should instead look to 18 U.S.C. §3161(h)(1)(F), which authorizes a tolling of the Speedy Trial clock for "delay resulting from transportation of any defendant [ ] to and from places of examination of hospitalization," but which expressly provides that such tolling is limited to 10 days. The court in *U.S. v. Bashar*, 3 F.Supp.3d 541 (E.D.Va. 2014), considered this exact argument and persuasively rejected it. There, the defendant was found incompetent and committed to the BOP for treatment on January 17, 2014, but due to a lack of available bed space at FMC Butner, the defendant remained in ordinary detention as of March 13, 2014, the date of the court's order. The Government moved to exclude that elapsed time from the Speedy Trial calculation pursuant to 18 U.S.C. §3161(h)(4), whereas the defendant contended that the "transportation" provision – and 10-day limit – of 18 U.S.C. §3161(h)(1)(F) was more appropriate for the circumstances. The court agreed with the Government, finding that the 10-day transportation limitation was intended to "not permit

---

Thus, the Speedy Trial clock began running on March 24, 2022. However, by that time, the parties had already orally moved for a determination of Mr. Castrellon's competence (D. 14). The pendency of that motion operated to toll the Speedy Trial clock pursuant to 18 U.S.C. §3161(h)(1)(A), which excludes any "delay resulting from any proceeding, including any examinations, to determine the mental competency [ ] of the defendant." Mr. Castrellon was involved in such proceedings between March 18, 2022, when counsel first requested a competency evaluation, and August 23, 2022, when the Court made a finding that Mr. Castrellon was incompetent. Thereafter, as discussed herein, the Speedy Trial clock remained tolled pursuant to 18 U.S.C. §3161(h)(4).

9

additional delays to accommodate the *marshals*," but that it was not intended to "restrict the accommodation of medical facilities hampered by limited bed space." *Id.* at 544 (emphasis in original).

Cases like *U.S. v. Dellinger*, 980 F.Supp.2d 806 (E.D.Mi. 2013) *and cases cited therein*, are not to the contrary. In that case, the court directed that a defendant be hospitalized for competence restoration, but several months passed before the defendant was transported to a medical facility. That delay was attributed to the U.S. Marshals Service reporting that "the transportation order must have 'slipped through the cracks.'" *Id.* at 810. In those circumstances, the court correctly determined that the delay was due to a "transportation" failure by the Marshals, and that failure was properly governed by 18 U.S.C. §3161(h)(1)(F)'s 10-day limitation. As the court in *Dellinger* explained, the 10-day limit on transportation delays is a reflection of "a Congressional desire that the Marshals Service not delay transporting prisoners for economic reasons, such as waiting for more prisoners to be assembled before incurring the cost of moving them." *Id.* at 813. *Dellinger* correctly reasons that the same concerns would govern decisions by the Marshals to delay transportation of incompetent defendants to medical facilities. Thus, *Dellinger* and other cases stand for the proposition that when the cause of the delay is the <u>Marshals Service</u> failing to expeditiously transfer the defendant to an available medical facility, the 10-day limit of §3161(h)(1)(F) is appropriate.

Here, there is no showing that FMC Buter stands willing to accept Mr. Castrellon, and that it is the Marshals Service that is delaying his transportation. Rather, the record is clear that it is a lack of available bed space at FMC Butner or any other appropriate facility. *See* D. 32 at 2 (the BOP reports that "all facilities currently have a wait time of between eight and nine months for competency restoration"). Thus, the reasoning of *Bashar* is more appropriate here than that

of *Dellinger* and the Court finds that 18 U.S.C. §3161(h)(4) provides the appropriate basis to toll the Speedy Trial clock for the entire period between August 23, 2022 and the present. Accordingly, Mr. Castrellon has not suffered any deprivation of his statutory Speedy Trial rights.

Nevertheless, as discussed above, the Due Process clause ensures that Mr. Castrellon's constitutional right to a speedy trial is preserved even where the Speedy Trial Act itself might not be offended. Under *Barker v. Wingo*, 407 U.S. 514 (1972), the court examines several factors to determine whether the degree of delay has risen to constitutional levels, but before doing so, it must first consider a "gatekeeper" factor: whether the amount of delay is enough to be "presumptively prejudicial." *See U.S. v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006). Generally speaking, a pretrial delay "approaching one year" satisfy that requirement. *U.S. v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006). Here, Mr. Castrellon has been in custody since his arrest on March 14, 2022, a period that is rapidly approaching one year. Because he satisfies the first of the *Barker* factors, the Court examines the remaining ones, namely: (i) the reasons for the delay, (ii) the defendant's assertion of or failure to assert his right to a speedy trial, and (iii) any prejudice to the defendant from the delay. *Id.*

Here, the reason for the delay in bringing Mr. Castrellon to trial relate to his mental competence. Competence-determination proceedings began promptly when the parties raised the issue of his competence as his arraignment on March 18, 2022, and concluded with the August 23, 2022 finding of incompetence, a period spanning approximately five months. Thereafter, it is undisputed that the remaining delay (from August 23, 2022 to the present), a span of approximately seven months, is attributable to the unavailability of bed space to begin the competence restoration process of 18 U.S.C. §4241(d). As discussed in *Barker*, delays that are deliberately caused by the government weigh heavily against it, which delays that are beyond its

control would justify a delay.  407 U.S. at 531.  In between those poles are situations where the government is responsible for the delay, but did not intend it, including situations involving "crowded court dockets."  *Batie*, 433 F.3d at 1291.  In those circumstances, the delay factor weighs less-heavily against the government, but it still must be considered.  *Id.*

Here, the Court cannot say that the Government bears any culpability for the five-month delay in assessing Mr. Castrellon's competence.  The record reflects that both sides jointly requested a competence determination (D. 14), and nothing indicates that the Government took any action thereafter that directly or indirectly slowed the process of obtaining that determination.[4]  By contrast, the seven-month delay (and counting) in delivering Mr. Castrellon to a facility to attempt to restore his competence is attributable to the Government, but in the less-heavily-weighed category attributable to unintended delays.  The absence of sufficient facility space and staff to immediately address all defendants deemed incompetent reflects an allocation of government resources to different priorities, but the Court has not been presented with evidence that suggests that that result is a deliberate attempt by the government to delay trial for defendants with mental competence issues.  As such, the Court finds that a seven-month portion of the delay is attributable to the Government, albeit with fairly minimal weight.

As to Mr. Castrellon's assertion of his speedy trial rights, the Court looks to whether the entirety of his course of conduct throughout the case "evinces a desire to go to trial with dispatch."  *Batie*, 433 F.3d at 1291.  Here, competence proceedings have been the only material

---

[4]   The fact that FDC SeaTac requested additional time to complete Mr. Castrellon's evaluation due to COVID-related disruptions is not a circumstance that is particularly attributable to the Government, rather than to external forces outside the Government's controle. Nevertheless, even if the Court were to consider the one-month period of time that the facility required to complete the evaluation as additional delay attributable to the Government, the Court's conclusion would not be different.

proceedings in this action.  One cannot say that Mr. Castrellon has, through his own filings, delayed the progress of this action.  At the same time, Mr. Castrellon concurred in the request for a competence determination, a process that was almost certain to lead to considerable delay.  This is not to suggest that Mr. Castrellon, through counsel, should have opposed a competence determination that counsel believed was necessary, nor that counsel should not have joined in the Government's request for such a determination.  It is merely a recognition that in the weighing of the *Barker* factors, this is a factor that may tip in Mr. Castrellon's favor, albeit with minimal weight.

Finally, the Court turns to the question of whether Mr. Castrellon has been prejudiced by the delay.  The guarantee of a speedy trial is intended to avert the harms of excessive pretrial incarceration, anxiety by the accused, and the possibility of impairment of the defendant's ability to mount a defense.  *Batie*, 433 F.3d at 1292.  The most serious of these factors is impairment of a defense, and Mr. Castrellon has not suggested that the delay of proceedings due to his incompetence has somehow deprived him of the ability to marshal favorable substantive evidence.  Indeed, Mr. Castrellon has not identified any particular prejudice he has suffered as a result of the delay, although the Court can infer that the inconvenience of pretrial incarceration and the anxiety associated with pending criminal charges are significant.  At the same time, Mr. Castrellon's continued detention for mental incapacity may have some salutary benefits as well, both as to Mr. Castrellon's general mental health and particularly given that Mr. Castrellon's defense to the charges here may very well entail arguments of diminished mental capacity.  In that regard, the Court finds that the prejudice factor points in neither side's favor.

Taking the *Barker* factors together, the Court finds that Mr. Castrellon's constitutional speedy trial rights have not yet been violated.  The delay in question is sufficiently long to trigger

the *Barker* analysis, albeit just barely. The Government is culpable for only a portion of the delay, and that culpability is moderated by a lack of intent and the understandable staffing and capacity circumstances that are affecting many sectors of post-COVID society. Mr. Castrellon has not demonstrated that he has suffered any substantial prejudice from the delay at this point, and indeed, determinations regarding his mental capacity may ultimately assist in his defense of the charges here. The Court is gravely concerned about the Government's representation that 8-9 month delays in admitting incompetent defendants for treatment is now routine and such delays will operate to carry the Government right up to the boundary of a constitutional speedy trial violation in short order. It may very well be that any significant delay beyond the four-month period of competence restoration permitted by 18 U.S.C. §4241(d)(1) will push this case into dubious constitutional territory, and the Government is well-advised to be prepared to move with all great expeditiousness should Mr. Castrellon be restored to competence. But at the present time and on the present record, the Court is satisfied that Mr. Catrellon's motions should be denied.

### Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that Mr. Castrellon's Motions To Dismiss the Indictment (D.. 33, 38) be **DENIED WITHOUT PREJUDICE**. Pursuant to 28 U.S.C. §636(b)(1)(B), any party objecting to this recommendation must file Objections within 14 days of service.

Dated at Grand Junction, Colorado this March 1, 2023.

**Gordon P. Gallagher**
United States Magistrate Judge